754 So.2d 746 (2000)
Cathy Darlene LESTER, Appellant,
v.
STATE of Florida, Appellee.
No. 1D99-28.
District Court of Appeal of Florida, First District.
February 9, 2000.
Nancy A. Daniels, Public Defender; Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Karla D. Ellis, Assistant Attorney General, Tallahassee, for Appellee.
*747 BENTON, J.
Cathy Darlene Lester appeals an order placing her on probation. She contends the trial court erred in denying her motion to suppress evidence that was seized after a search of her person. We reverse.
After the trial court denied the motion to suppress, she entered a plea of nolo contendere to charges of possession of cocaine and drug paraphernalia, reserving the right to appeal the ruling on the motion to suppress. The trial court withheld adjudication and placed her on two years' probation on the cocaine count concurrent with one year's probation on the paraphernalia count. As part of the plea agreement, the state stipulated that the ruling on the motion to suppress was dispositive.
We have jurisdiction. See Mylock v. State, 750 So.2d 144 (Fla. 1st DCA 2000); Phuagnong v. State, 714 So.2d 527, 529 (Fla. 1st DCA 1998) ("[W]e hold that a stipulation voluntarily entered into by all parties that an issue preserved for appeal by a defendant's nolo contendere plea is dispositive will be so considered by this court."); Zeigler v. State, 471 So.2d 172, 175-76 (Fla. 1st DCA 1985); Jackson v. State, 382 So.2d 749 (Fla. 1st DCA 1980), aff'd, 392 So.2d 1324 (Fla.1981).
Steve Hough of the Okaloosa County Sheriff's Office testified at the suppression hearing that, at about half past three o'clock on the afternoon of September 30, 1998, he observed Ms. Lester, seemingly intoxicated, staggering alongside of and into the roadway at 705 Lloyd Street, beer in hand. The only witness at the hearing, Deputy Sheriff Hough testified that he stopped Ms. Lester because he felt she was endangering herself and asked her to pour out the beer. She complied. Only after the deputy sheriff ran a "warrants check" and learned that there was no outstanding warrant for her arrest did he conduct a "safety pat down" of Ms. Lester.
Patting her clothing, Deputy Sheriff Hough felt a cylindrical object in a pocket which he testified he recognized as drug paraphernalia (a pipe). Having discovered drug paraphernalia, he testified, he felt himself justified in conducting the subsequent search of Ms. Lester during which he found three pieces of a white substance that appeared to him and in fact turned out to be cocaine.
"Review of a Florida motion to suppress [can present] a mixed question of law and fact, yoked to federal law. Art. I, § 12, Fla. Const.; Perez v. State, 620 So.2d 1256 (Fla.1993)." Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998). See Phuagnong v. State, 714 So.2d at 529 ("On review of the trial court's order on the suppression motion, `legal questions are subject to de novo review, while factual decisions by the trial court [viewed in light of constitutionally mandated burdens of proof] are entitled to deference commensurate with the trial judge's superior vantage point for resolving factual disputes.' State v. Setzler, 667 So.2d 343, 344-45 (Fla. 1st DCA 1995).").
At the suppression hearing, the state had the burden to prove a lawful basis for the search, once Ms. Lester demonstrated standing. On appeal, she does not argue that the deputy sheriff's reason for stopping her was invalid. But, she contends, under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), before frisking a temporarily detained citizen for weapons, a law enforcement officer must have some reason to believe that the detainee is armed.
Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be *748 warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
Terry, 392 U.S. at 27, 88 S.Ct. 1868 (emphasis supplied and citations and footnote omitted). Florida's Stop and Frisk Law requires at least as much. See § 901.151(5), Fla. Stat. (1997). ("Whenever any law enforcement officer authorized to detain temporarily any person has probable cause to believe that any person ... whom the officer has temporarily detained... is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon.").
Here, Deputy Sheriff Hough testified that, after stopping Ms. Lester, and ascertaining that no warrant authorized her arrest, he "conducted a safety pat down due to the area and [his] knowledge of the area." He said that the area in which he encountered Ms. Lester was known for "narcotic activity" and for "firearm involvement." He acknowledged that he had no reason to believe that Ms. Lester had a weapon on her person, except that, "due to past experience of the area[,][he] felt that it was necessary for [him] to conduct a search."
We have repeatedly rejected such purely geographic rationales. See, e.g., Pritchett v. State, 677 So.2d 317, 320 (Fla. 1st DCA 1996); M.A.H. v. State, 559 So.2d 407, 408-09 (Fla. 1st DCA 1990); L.D.P. v. State, 551 So.2d 1257, 1258 (Fla. 1st DCA 1989); Gipson v. State, 537 So.2d 1080, 1081-82 (Fla. 1st DCA 1989). While law enforcement officers need not ignore the character of a neighborhood, cf. Illinois v. Wardlow, ___ U.S. ___, 120 S.Ct. 673, 145 L.Ed.2d 570 (U.S.Ill.2000) (holding type of neighborhood may be relevant to existence of reasonable suspicion justifying a stop), Ms. Lester's mere "presence in a high drug crime area [did not] satisfy [either] the requisite standard of probable cause," M.A.H., 559 So.2d at 409, prescribed by Florida's Stop and Frisk Law or the requirements Terry lays down for nonconsensual searches. The only basis for the searchMs. Lester's presence in a neighborhood with an unsavory historywas legally insufficient to justify frisking her. See L.D.P., 551 So.2d at 1258.
The state does not argue otherwise on appeal. Instead, the state seeks to support the trial court's ruling on a ground not even mentioned below. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999) ("If an appellate court, in considering whether to uphold or overturn a lower court's judgment, is not limited to consideration of the reasons given by the trial court but rather must affirm the judgment if it is legally correct regardless of those reasons, it follows that an appellee, in arguing for the affirmance of a judgment, is not limited to legal arguments expressly asserted as grounds for the judgment in the court below. It stands to reason that the appellee can present any argument supported by the record even if not expressly asserted in the lower court."); MacNeill v. O'Neal, 238 So.2d 614, 615 (Fla.1970); Knox v. State, 689 So.2d 1224, 1225-26 (Fla. 5th DCA 1997).
The state's new theory is that Ms. Lester's conduct violated what is alleged in the state's brief to be a provision of a municipal ordinance of the City of Fort Walton Beach prohibiting the possession of an open container of alcohol "on the streets, sidewalks, rights-of-way, parking lots and alleys of the city." While section 90.202(10), Florida Statutes (1997), authorizes courts to take judicial notice of duly enacted ordinances of Florida municipalities, "provided such ordinances ... are available in printed copies or as certified copies," we decline to do so here where, among other things, no copy has been furnished. See also Holmes v. State, 273 *749 So.2d 753, 753-55 (Fla.1972); State ex rel. Kay v. City of Miami, 158 Fla. 26, 27 So.2d 413, 413 (1946) (declining to take judicial notice of a municipal ordinance "not made a part of the record and ... not before us for construction"); Nicholas v. First Interstate Dev. Corp., 315 So.2d 238, 240 (Fla. 4th DCA 1975); Haverty v. State, 258 So.2d 18, 20 (Fla. 2d DCA 1972); Applied Research Lab. of Fla. v. Homer, 249 So.2d 732, 733 (Fla. 3d DCA 1971); City of Opa-Locka v. Trustees of the Plumbing Indus. Promotion Fund, 193 So.2d 29, 32 (Fla. 3d DCA 1966).
The state maintains that, because Ms. Lester had in her possession an open can of beer, Deputy Sheriff Hough could have arrested her for violating the alleged ordinance and conducted a search incident to arrest. But nobody so much as alluded to an ordinance in the proceedings below. No ordinance was proven at the hearing. The trial court was not asked to take judicial notice of any ordinance. Nor is it clear on this record that Ms. Lester was within the municipal limits of the City of Fort Walton Beach when she was stopped. The state did not, in short, prove an arrest for violating an ordinance.
Reversed.
KAHN, J., and SHIVERS, DOUGLASS B., Senior Judge, CONCUR.